**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 05-cv-02064-REB-MEH

JOHN AND BRENDA NICHOLAS, individually and as successors in interest to THE ESTATE OF DEMETRIOS JOHN NICHOLAS, deceased,

Plaintiffs,

v.

RICHARD B. BOYD,
ROBERT ALLEN,
HAROLD CHEUVRONT, and
ROBERT FRANCISCO,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter is before me on the **Defendants' Motion for Summary Judgment** [#43], filed December 8, 2006. The plaintiffs filed a response [#54] and the defendants filed a reply [#65]. I grant the motion.[1]

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II. SUMMARY JUDGMENT - STANDARD OF REVIEW

Under **FED. R. CIV. P. 56(c)**, summary judgment is proper only if the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no

---

[1] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. ***Geear v. Boulder Cmty. Hosp.***, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. ***Farthing v. City of Shawnee, Kan***. 39 F.3d 1131, 1134 (10th Cir. 1994). A "material" fact is one "that might affect the outcome of the suit under the governing law," ***Id.*** at 1135 (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986)), and a "genuine" issue is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Id.*** (citing ***Anderson***, 477 U.S. at 248).

## II. FACTS

Based on the current record in this case, I find that the following facts are undisputed. On December 6, 2001, Rio Nicholas was found dead in the shower of his dormitory suite at the Colorado School of Mines (CSM). Plaintiffs Brenda and John Nicholas are the parents of Rio Nicholas. Rio Nicholas's death was investigated by defendant Robert Allen of the CSM Police, under the direction of defendant Richard Boyd. The Jefferson County Coroner's office conducted an investigation of the cause of Rio Nicholas's death and determined the cause of death to be cocaine toxicity. After the Coroner's determination, the CSM police closed its initial investigation, concluding that Rio Nicholas's death was caused by an accidental drug overdose.

In early 2002, plaintiff John Nicholas began to question whether CSM Police could be trusted to do a thorough and proper investigation of Rio Nicholas's death. *Motion for Summary Judgment* [#43], filed December 8, 2006, Exhibit D (Deposition of John Nicholas) pp. 73 - 74. At a meeting held in February, 2002, John Nicholas presented a list of questions about the investigation of his son's death to CSM officials, including defendant Dean Harold Cheuvront. At that meeting, the president of CSM

said he would recommend to the board of trustees that the school retain a private investigator to investigate Rio Nicholas's death. *Id*., p. 82. John Nicholas later learned that the follow-up investigation would be conducted by defendants Boyd and Allen, members of the CSM Police Department who were involved in the initial investigation. In May, 2002, defendant Boyd, Chief of the CSM Department of Public Safety, requested that the District Attorney's Office conduct a review of the CSM police investigation of Rio Nicholas's death. The District Attorney's Chief Investigator issued a report of his review on May 15, 2002. John Nicholas received a copy of that report at about that time.

After receiving the District Attorney's report, John Nicholas engaged an attorney, Michael Hinton, to assist him with questions he had about his son's death. In mid-summer 2002, John Nicholas hired a private investigator to conduct an investigation of Rio Nicholas's death. Investigator Ed Martin's investigation was complete by March 20, 2003, and Martin issued a final, detailed report of his investigation on that date. *Id*., Exhibit C. John Nicholas read Martin's report shortly after it was issued.

On May 6, 2003, Brenda Nicholas prepared a letter addressed to Dave Thomas, the District Attorney in Jefferson County, Colorado. Speaking of CSM officials, including the defendants, Brenda Nicholas says in her letter:

> Around the end of January 2002 I KNEW we were being put off, led on by Boyd And the powers that be.
>
> * * * *
>
> They just stalled us, lied to us. letting more time go by. Time is of the essence, They did not want to know what happened to Rio - It would not be good for them. The[y] knew And still know Brandon [Reese, Rio's roommate] has been lying from the start . . .
>
> * * * *

> The contention that Rio died of a self induced, unattended drug overdose in the shower is as we say in Texas, absolute BULL____!! We do know Rio did not die in that shower.

*Id.*, Exhibit I, pp. 1, 2.

On May 7, 2003, John Nicholas prepared a letter addressed to Dave Thomas, District Attorney in Jefferson County, Colorado. John Nicholas's letter of May 7, 2003, states:

> We have been so screwed around by the (Mines) authorities (DPS [Department of Public Safety] and Student Life). …As you study the evidence and get to know Rio through these people you too will see the absurdity of accepting Boyd's theory of what happened.
>
> * * * *
>
> There is a preponderance of evidence to support our contentions that Rio could not have acted alone, did not die in the shower, had a very large amount of cocaine in his system and was at odds, to say the least, with the "Dirty People" (Reese, Jaberniks, Snyder, etc.) …
>
> * * * *
>
> In light of this evidence consider this: If you could incapacitate someone and introduce enough drugs to induce an overdose and then set the scene to make it appear that the person had acted alone, what would you have? The perfect crime! Add to that an incompetent, prejudiced law enforcement team (Boyd and Allen with support and complicity of Dean Cheveront Bob Francisco and Ed Libertore—Mines legal council) who were more concerned with protecting the school's reputations and their own butts than getting to the truth and you have a set of circumstances in play which have led to the train wreck we are now (and have been) witnessing. …
>
> * * * *
>
> I could not believe that we were not entitled to a proper investigation and answers to questions that remain unanswered due to incompetence and a clear pattern of obstruction, lies, and deceit propagated by the above mentioned authorities. … Boyd/Allen's theory has been supported and propped up by a convoluted investigative practice that has desperately tried to show why their theory was right and used police resources and energy to systematically and in a calculated way effect the following:
>
> 1. Establish and reinforce their contention that Rio was a "druggie", had a dark side, and was a binge narcotics user

2. Ignore evidence that indicates otherwise

3. Destroy evidence

4. Lie to Mr. Nicholas to throw him of the trail

5. Propagandize through email and the campus newspaper to plant seeds of doubt in the student body and hence hamper efforts to get to the truth

6. Protect Brandon Reese from prosecution

7. Help Reese to avoid consequences of illegal and obfuscatory behavior

8. Delay follow up investigation ordered by President Trefny until the very end of the semester allowing valuable time to lapse

9. Ignore questions that were supposed to have been addressed in said investigation

*Id*., Exhibit J, pp. 1, 2.

The plaintiffs filed this case on October 19, 2005. In their First Amended Complaint [#27], filed August 16, 2006, the plaintiffs assert two claims under 42 U.S.C. § 1983. In their first claim for relief, the plaintiffs alleged that defendants Boyd, Allen Cheuvront, and Francisco, acting under color of state law, agreed to suppress, conceal, and deprive the plaintiffs of evidence demonstrating that Rio Nicholas was a victim of homicide, and that his death was not caused by a self-induced drug overdose. In their second claim for relief, the plaintiffs allege that the defendants, acting under color of state law, deprived the plaintiffs of evidence of Rio Nicholas's homicied, and denied the plaintiffs the evidence necessary to bring and maintain one or mor causes of action for damages for Rio Nicholas's wrongful death.

## III. STATUTE OF LIMITATIONS

The statute of limitations applicable to § 1983 actions in federal courts is the statute of limitations of the state in which the court is located. ***Board of Regents v.***

***Tomanio***, 446 U.S. 478, 483-84 (1980). For § 1983 actions, the court should use the statute of limitations for tort actions and the recovery of personal injuries. ***Wilson v. Garcia***, 471 U.S. 261, 276 (1985). The two year statute of limitations provided in §13-80-102, C.R.S., is applicable to § 1983 claims filed in the District of Colorado. ***See Blake v. Dickason***, 997 F.2d 749 (10th Cir. 1993).

Although the period of limitations is provided by a state statute, federal law governs questions concerning the accrual of a federal cause of action. ***Baker v. Board of Regents of State of Kan.***, 991 F.2d 628, 632 (10th Cir. 1993). “A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.” ***Id***. The injury which is the “basis of the action” in such a case is the violation of some constitutional right, not the physical, mental, or other harm that may have been, or will be, occasioned by it. ***Smith v. City of Enid By and Through Enid City Com'n***, 149 F.3d 1151, 1154 (10th Cir. 1998). A claim under § 1983 accrues when the plaintiff knows or should know that his or her constitutional rights have been violated. ***Id***.

The defendants argue that the plaintiffs’ claims are barred because the two year period of limitations had expired before the plaintiffs filed this case. The defendants cite, *inter alia*, the plaintiffs’ May, 2003, letters to Dave Thomas as a clear indication that the plaintiffs were aware of facts, which they perceived as indicating that the defendants had taken actions, or had failed to act, in a manner that violated the plaintiffs’ constitutional rights. The plaintiffs argue that they did not “learn until the spring or summer of 2005 that their son had likely died as a result of the wrongful conduct of other students, individuals who could have been the defendants in wrongful

death cause of action, <u>but for the intentional conduct of Defendants to obstruct and cover up their conduct.</u>" *Plaintiffs' Response* [#54], filed January 8, 2007, p. 4 (emphasis in original). Without evidence that their son died as the result of the wrongful conduct of others, the plaintiffs argue, they could not have pursued a wrongful death action against those who killed their son. *Id*.

The undisputed facts in the record demonstrate that in May, 2003, when the plaintiffs each wrote letters to Dave Thomas, the plaintiffs were aware of myriad facts that they now claim constitute a violation of their constitutional rights. Their § 1983 claims in this case are founded on the various criticisms of the defendants' investigation of Rio Nicholas's death which they cited in their May, 2003, letters to Dave Thomas, and which they again cite in their First Amended Complaint. In his May 7, 2003, letter to Dave Thomas, plaintiff John Nicholas said:

> There is a preponderance of evidence to support our contentions that Rio could not have acted alone, did not die in the shower, had a very large amount of cocaine in his system and was at odds, to say the least, with the "Dirty People" (Reese, Jaberniks, Snyder, etc.) …

*Motion for Summary Judgment* [#43], filed December 8, 2006, Exhibit J, p. 1. Plaintiff Brenda Nicholas expressed essentially the same awareness in a letter she wrote one day earlier.

Again, a claim under § 1983 accrues when the plaintiff knows or should know that his or her constitutional rights have been violated. ***Id***. The undisputed facts in the record demonstrate that the plaintiffs had such an awareness no later than May 7, 2003. The initial complaint in this case was filed on October 19, 2005, more than two years later.

Assuming that the defendants' actions caused the plaintiffs to forfeit their ability

to pursue a wrongful death action based on the death of their son, and assuming that injury was not suffered until two years after Rio Nicholas's death, that fact does not mean that the plaintiffs' § 1983 causes of action accrued on a date later than they otherwise would accrue. "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." ***Indus. Constructors Corp. v. U.S. Bureau of Reclamation***, 15 F.3d 963, 969 (10th Cir.1994). When determining the date on which a § 1983 claim accrued, the relevant inquiry is when were the plaintiffs aware of the alleged violation of their constitutional rights. It would be analytically incorrect to link accrual of a cause of action under § 1983 to a plaintiff's knowledge concerning the extent of the harm the constitutional violation had caused or may cause. Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude that the plaintiffs' § 1983 claims are barred by the applicable statute of limitations.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion for Summary Judgment** [#43], filed December 8, 2006, is **GRANTED**;

2. That judgment **SHALL ENTER** in favor of the defendants, Richard B. Boyd, Robert Allen, Harold Cheuvront, and Robert Francisco, and against the plaintiffs, John and Brenda Nicholas, individually and as successors in interest to the Estate of Demetrios John Nicholas, deceased;

3. That the plaintiffs' claims are **DISMISSED WITH PREJUDICE**;

4. That the Trial Preparation Conference set for November 16, 2007, at 11:30 a.m., and the trial scheduled to commence on Monday, December 3, 2007, are

**VACATED**;

5. That defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR. 54.1; and

6. That any other pending motions, including the motions docketed as [#35] and [#36], both filed October 30, 2006, are **DENIED** as moot.

Dated September 18, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**